Good morning. May it please the Court, good morning. My name is Mary Pogalis. I represent the appellant in this matter by court appointment. I have a limited time. I have a few particular topics that I'd like to at least hit on, but the most important of them all is simply to state that I not only represent Mr. Faultry in this case, I feel as though I'm standing here in defense of the Sixth Amendment right of self-representation that the United States Supreme Court recognized, not recognized, guaranteed in Ferretta. Which is taking the lawyer he was forced to have in this case and giving it to the other guy in the prior case who didn't have a lawyer. Oh, yeah, right. Who could only do that. Ferretta, ever since, was it Justice Douglas who wrote Ferretta, if I remember correctly? Well, I'm afraid I don't recall. I think I remember when it came out. I think it was Stevens. It's taken a beating. It has not fared well. I'm sorry? It has taken a beating ever since. Oh, yes, it has. Since, I think I was in law school when it came out. Oh, yes. And it has not fared well. No, especially in California. I have to say that So what do we say? The California Supreme Court, your client won the first time, right? Yes. In the Court of Appeal, right? Yes. When Ferretta, when the court was looking to Ferretta, it found that it was timely. Right, right, right. I think we're on the same page. So the Court of Appeal was willing enough to apply it, and then the California Supreme Court comes up with this opinion that says there are limits, and the other factors on timeliness, and sort of establishes this rule. So the Court of Appeal is bound. There's no, you can't fault them, right? So if you're going to win here, it's going to be by, I think, it's going to be by persuading us that the California Supreme Court was out of line in setting those limits. Well, they were. How can we say that? Because they took the timeliness standard of Ferretta and replaced it entirely with a standard that allowed for this guaranteed right to be denied pretty much solely because the case was going to be delayed for the defendant to have an opportunity to prepare. The Court of Appeal emphasized that when it took Lynch and did its entire analysis on that State case rather than on Ferretta anymore, I think the fact that the Court of Appeal did a complete turnaround. And when you look at those two decisions, and I'm sure you have all read them, when I read them, when I got to the second one, I was shocked. I mean, I've been a practicing attorney for a long time. I've probably done 140 jury trials, 50, 60 appeals. I have never seen such a dramatic distortion and shift of fact-finding as I found between those two decisions. Doesn't Ferretta embedded in Ferretta, though, isn't there a notion of timeliness? Oh, absolutely. Within weeks? And I don't see how this Court can get around its own precedent that says. Within weeks of trial. So let me just say, when I read the colloquy on, I guess it was January 16th, when he raises the Ferretta motion, I thought the case was there for trial. No. Well, no, because everyone knew when they looked. But it had been set for trial that day, correct? It had been set for trial umpty-umpty times. Well, on January 15th, the day before, it was set for trial in Department 22. Right. And everyone showed up on the 16th knowing it couldn't go. Right. Because defense counsel had another time-not-waived case that had to go. Everyone knew it wasn't going to go. But then the master calendar judge transfers it to Department 28 for trial. Yes. Well, yes, except everyone knew it wasn't going to go to trial. But what do we do with that, though? I mean, the case was ready for trial. No, it wasn't ready for trial. And I don't think the court of appeal even found that it was. What they found, I mean, if you look at what they. So it wasn't a real trial date. It was, you know, their findings on where the case was in their first opinion, they said there was no trial date, really. It wasn't going to go. No one knew when it was going to go. All that they could tell was it was going to be at least weeks. That's what the court of appeal said in its first decision. And they were right. And the record supports that. Then comes Lynch and the court of appeal wanting to please the California Supreme Court, apparently. I don't think you have to. Is that a bad thing? I mean, from time to time we're supposed to please the U.S. Supreme Court. We don't always succeed. No, you're not supposed to please them. They want us to. You're supposed to follow the law. Well, so they thought they were following Lynch. No, I don't believe they did. I think they knew they had to twist those facts all around to cram them into Lynch. And they forgot about Ferretta. And they forgot about the fact this court, the Ninth Circuit, has held for a decade or more that the standard is state courts cannot start messing with this and putting their own spin on it. They have to comport with the standards set by the Supreme Court. That's what Marshall v. Taylor says. A request weeks before trial is timely. There was never any question that Mr. Faltry didn't do a thing to delay, didn't do this to delay, to obstruct. In each opinion that was affirmed. No, in the second opinion they basically treated the January 16th date as a trial date. No, the trial judge didn't treat it as a trial date. No, but I mean the California court of appeal in its opinion. No, I don't think they did. I don't think they ever said. They said things like it was positively contemplated that it would go to trial. There were things that had to be done, but everyone was on that path. I mean these were the kinds of descriptors they had for the time status. It was a truly abusive decision on this thing. If there is no vigilance, and I understand all this, state courts get discretion. I understand that if it's not weeks before trial, and here it was four months before trial, the Supreme Court didn't say weeks before the latest trial date. They said weeks before the trial began. The judge in Department 22 didn't know it was going to be four months later before the trial would start. No, she didn't know it was going to be four months. Whoever the judge was in Department 22 knew that it was going to be. Weeks. Weeks. Weeks. That's correct. I don't see how this court can get around Marshall v. Taylor, Ferretta, and the Supreme Court decision in, I think it's Marshall v. Rogers, that says you use your own precedent to decide if this is a clearly established Supreme Court standard. You did it ten years ago. Apply it here, and this has to get reversed. The court of appeal should not have done what they did, and it cries out for correction from this court. I would like to reserve my two minutes for rebuttal, unless you have questions. I was wrong about Ferretta. It was Justice Stewart. Stewart. Yes, okay. Stewart, Douglas. I knew it was S.T. I was thinking Stevens, but no. All right. Oh, no. Stevens replaced Douglas. Okay. So they've never been on the same court. We'll hear from the other side. Good morning, Your Honors. May it please the Court. Bruce Ortega of the California Attorney General's Office representing the respondent here. I'd like to begin where Judge Kuczynski asked about the reasonableness of the State Supreme Court opinion. To me, that's the first issue in the case. I understand that this court has held that it's clearly established law in Ferretta that a Ferretta motion made weeks before trial is timely and that the court has no discretion to deny it. Aren't we bound by that determination? You are. You are. I'm not here asking this court to overrule that. But now this court has a separate issue in front of it. The California Supreme Court in Lynch said, we don't believe that's what Ferretta holds. We don't believe Ferretta has that weeks before trial standard is invariably timely. That's what they said. The California Supreme Court read Ferretta to understand that the court, the trial court, can always take the circumstances of the case in front of it when the motion is made in ruling on the Ferretta motion. So the first issue is, is that ruling by the California Supreme Court objectively unreasonable? And if it's not, then the California Supreme Court is allowed to implement that rule and the AADPA does not allow this court to reverse it. However, issue two, let's assume the court says, you know what? The California Supreme Court was objectively unreasonable in finding that Ferretta does not have a weeks before trial is necessarily timely rule. Then what do we do? Okay. It seems to me I have to be able to persuade this court that this record shows that this motion was made not weeks before trial, but when trial was imminent, during trial was close. And I think the record supports that. January 11th, it's sent to Department 22 for trial forthwith. January 15th, the court states this case was sent here for trial, but the court learns that Mr. Jacobs, the defendant's lawyer, has another trial. The court says, I'm going to put this matter over until tomorrow morning and give counsel a chance to get their motions filed, and I'm also going to speak with the master calendar judge about timing related to this case. We know what happens on January 16th. Defense counsel comes with the severance motion and other motions in hand. The prosecutor has his motions in hand, but the defense attorney tells the court, I have another trial, no time waiver. It's on calendar tomorrow. We have to get out by January 28th at the latest, and I anticipate that it would take no more than two weeks to try the case. So, it's certainly possible that it might not have gotten back to the trial court until February, I guess, would be 11th. But also, we know that the court said, okay, I want you back here on January 23rd for the severance motion, and we may learn then about what happened with Mr. Jacobs' case. Because there's no guarantee, as we all know, that the case would go to trial even. So, at January 15th, the time the trial court is called, January 16th, excuse me, the time the trial court is called upon to rule on the Ferretta motion, all it knows is it's coming back on the 23rd for severance, and the court said, well, come back on the 4th to determine where Mr. Jacobs is and where the case is. So, there was no positively definitive trial date. But trial was certainly contemplated. The motion wasn't made weeks before trial unless we do as appellant did and say, okay, well, the trial didn't take place until May. I understand that. It was made weeks before trial when we look in hindsight. But we don't judge the trial court's ruling. It seems to me that the trial court, for better or for worse, took everything into account except the Ferretta motion as being urgent. You know, the lawyers have a conflict, there's another trial, if they've got motions to file, those things count. But the Ferretta motion, I mean, she delays things for those reasons, but is not willing to delay things for the—is not willing to delay things for the—to allow defendant to represent himself. Correct. But then what happens is— Why is a motion to represent myself under sort of a lesser status or lesser dignity than all these other things that come into play that wind up delaying the trial four months? I'm not arguing— Four months? Five months? Yes, but it wasn't—at the time the motion was made, it was contemplated that we'll be back in a week for severance motions. Cumulatively, cumulatively, she allowed the puck to be kicked down the road for four months, right? Or she or he, I forget who the—but that judge or judges in that department, all these things were fine, but not the Ferretta motion. Well, let me step back. What happens on the 23rd is we learn that the defendant has had some physical issues. So then that slows everything up. That changes what's going on. And then we have the severance motion granted. So I could go and explain everything that happened after January 16th, but that isn't going to answer Your Honor's question, did the trial court give this Ferretta motion less dignity than the other motions? And I don't believe the trial court did, because California law allowed the trial court, when the Ferretta motion was in front of it, to take these other matters into consideration. That the case had been untried for two years. That it involved four or five different robbery incidents with many witnesses. That the defendant— The witnesses hadn't been subpoenaed for trial at that time. No. He had his witness. The prosecutor said, I have my witness list. Yeah, but he hadn't subpoenaed them, because I looked to see if whether the judge had ordered the witnesses back. No. That did not happen. Right. But the question then becomes, Your Honor, California law under Lynch allows the trial court, in ruling on timeliness, to take these— This judge didn't have Lynch in front of him at the time. You're correct. I'm sorry. You're correct, Your Honor. At the time of the Ferretta motion, all the trial court had was Wyndham. Right. And Wyndham had factors that deal with exercising your discretion on an untimely Ferretta motion. California didn't have a list of factors that went to the timeliness motion—the timeliness of the motion at the time. It was just a sort of reasonable time before trial. If the trial court finds that it wasn't a reasonable time before trial, it goes to the Wyndham factors. What our trial court did is use the Wyndham factors to find that it was untimely, reversed on appeal the first time. California Supreme Court decides Lynch. California Supreme Court says the Ninth Circuit rule isn't our rule. We don't just look at weeks before trial. We look at other things, including the time between the motion and the trial date, whether trial counsel is ready to proceed, the number of witnesses, the complexity of the case, ongoing pretrial proceedings, whether the defendant had earlier opportunities to assert Ferretta and any disruption or delay that would result from a granting of the Ferretta motion. So the court of appeal on the second time, taking those factors into consideration, said this motion was untimely. Now, I understand this court may find that it was California Supreme—or the court of appeal was wrong, but that's not good enough. This court has to find that Lynch is objectively unreasonable. Unless the court has any further questions, I'll submit. Thank you. Well, I could not disagree more. The California Supreme Court decision in Lynch is not before this court. It is not for you to decide if the California Supreme Court in Lynch was objectively unreasonable. What's to be decided here is whether the court of appeal in Faltry was objectively unreasonable, and they were. For one thing, Lynch can be distinguished in so many ways from what happened here, and the Supreme Court didn't say to the court of appeal, we're sending this back to you because we think you made a mistake. They said, we're sending this back to you for you to think about whether or not this would change your result. The Lynch case was a death penalty case. It was going to be about a two-month trial. The time waiver had been withdrawn on it by the defendant. There were some 65 government witnesses. Many, apparently, no particular number, but many were elderly. Many were outside the area. The defendant wasn't able to say how much time he needed to prepare. I mean, it was completely distinguishable factually from this case. What happened here, and I so urge the court to do something about this, because Ferretta is disappearing in the California courts, if, in fact, it did not have to be honored here. This was, I mean, the finding of the court of appeal in its first decision, when defendant presented his Ferretta motion, neither the court nor the parties had any firm notion of when trial would begin. The date of the commencement of trial, although vaguely contemplated to occur on February 4th, was still nebulous and speculative. More than that, serious obstacles to the commencement of trial within a reasonable time remained unsettled. And it goes on and on and on. And it completes with trial was at least weeks away. That's right. And if this court, the court of appeal in this case, ignored Ferretta, it acted objectively, unreasonably, and it should be reversed. Thank you. Thank you.
judges: Kozinski, Paez, Clifton